JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

)
) Case No.: LACV 20-00220-CJC(JCx)
)
)
MARTIN STRASBURGER, *et al.*, )
)
)
**Plaintiffs,** )
)
v. )
) **ORDER GRANTING PLAINTIFFS'**
) **MOTION FOR SUMMARY**
BLACKBURNE & SONS REALTY ) **JUDGMENT [Dkt. 101]**
CAPITAL CORPORATION, *et al.* )
)
)
**Defendants.** )
)

## I. INTRODUCTION & BACKGROUND

Plaintiffs—a group of fourteen private investors[1]—bring this action against Defendants Blackburne & Sons Realty Capital Corporation ("BSR") and George Blackburne III, one of BSR's officers, asserting, among other claims, a negligence cause of action against Defendants. (Dkt. 32 [Second Amended Complaint, hereafter "SAC"].)

---

[1] The investor Plaintiffs are Martin Strasburger, Jeffrey L. Aran, Krishna Bhola, Jennifer W. Bhola, John Brossard, Wendy Brossard, Mark Estle, Cynthia Estle, Jeffrey L. Foltz, Lisa A. Foltz, Howard Gottlieb, Daniel Hethcock, Mary S. Hethcock, and Patrick Hidalgo.

BSR is a commercial lending company that pools investment funds from private investors, like Plaintiffs, and uses those funds to syndicate loans to commercial borrowers. (Dkt. 54-1 [Statement of Genuinely Disputed Facts on First Motion for Summary Judgment, hereafter "First SGDF"] ¶ 1.) This case arises from Plaintiffs' investment in a $2,000,000 promissory note brokered by BSR (the "Loan") and secured by a property intended to be used as a hospice facility (the "Property"). (Dkt. 58 [Order on Plaintiffs' First Motion for Summary Judgment, hereafter "First MSJ Order"] at 2.) Relying on a negligently performed appraisal by the Peach Appraisal Group ("Peach"), (*see id*. at 2), BSR listed the Property's prospective value as $3,400,000 in a Mortgage Investment Bulletin that BSR sent to Plaintiffs, (*see* Dkt. 103-1 [Statement of Genuinely Disputed Facts, hereafter "SGDF"] ¶ 3.)[2] Plaintiffs relied on the representation of value in the Mortgage Investment Bulletin in making their decisions to invest in the Loan. (SGDF ¶ 4.) Plaintiffs made their investments in the Loan on various dates in March 2015. (*Id*. ¶¶ 16-24.) The true value of the Property as of May 1, 2015, however, was $870,000. (Dkt. 101-5, Ex. 2 [BSR's Complaint Against Peach in Georgia State Court, hereafter "Georgia Compl."] ¶ 23.)[3] The Loan went into default around October 2017. (First SGDF ¶ 11.) The Property was sold in March 2021 for $695,000. (SGDF ¶ 14.)

---

[2] Defendants object to Plaintiff's Statement of Undisputed Facts, paragraph 3, which states "[p]rior to Plaintiffs investing in the Loan, BSR sent Plaintiffs a Mortgage Investment Bulletin which represented the appraised value of the Security Property at $3,400,000.00[,]" on the grounds that it is hearsay and outside of the Plaintiffs' personal knowledge. (*See* SGDF ¶ 3.) These objections are unfounded. It should go without saying that Plaintiffs have personal knowledge of what they received from Defendants and what those documents stated. The representation of the Property's value made in the Mortgage Investment Bulletin is clearly a statement of a party-opponent. Fed. R. Evid. 801(d)(2). The representation of value is also not being introduced for the truth of the matter asserted: to prove that the Property was actually worth $3,400,000. It is instead being offered for the effect it had on Plaintiffs, as Plaintiffs assert that the representation was an impetus for their decisions to invest. *See United States v. Lopez*, 913 F.3d 807, 826 (9th Cir. 2019).

[3] Defendants dispute Plaintiffs' Statement of Undisputed Facts, paragraph 10, which states "[i]n the Appraisal Lawsuit BSR alleged that, at the time it was valued at $3,400,000.00 in the Peach Appraisal, the true value of the security property was no more than $870,000.00[,]" on the ground that Plaintiffs' supporting evidence does not support this assertion. (SGDF ¶ 10.) This is untrue. Plaintiffs submit the very complaint in which BSR alleged exactly what Plaintiffs say BSR alleged: that the Property was worth $870,000 in May 2015. (*See* Georgia Compl.)

On November 30, 2020, the Court granted in part Plaintiffs' first motion for partial summary judgment. (*See* First MSJ Order.) The Court found that BSR owed a fiduciary duty to Plaintiffs with respect to the Loan and found that BSR was vicariously liable for Peach's fraud or negligence. (*See* First MSJ Order at 6.) The Court relied on *Barry v. Raskov*, 232 Cal. App. 3d 447 (1991), which held that mortgage loan brokers, like BSR, owe lenders, like Plaintiffs, a non-delegable fiduciary duty, must provide lenders with an estimated fair market value of the property securing a loan, and are "liable to the lender for the fraud or negligence of an independent property appraiser hired to appraise property that will be used to secure the loan."[4] *Id*. at 455-57.

On February 2, 2021, the Court granted Plaintiffs' second motion for partial summary judgment, finding that Peach negligently performed its appraisal of the Property. (Dkt. 70 [Order on Plaintiffs' Second Motion for Summary Judgment, hereafter "Second MSJ Order"].) Coupled together, Plaintiffs' first two successful motions for summary judgment established that BSR owed Plaintiffs' a duty of care and is vicariously liable for Peach's breach of that duty of care through its negligent appraisal of the Property. What is left, then, are the issues of causation and damages, *see Peredia v. HR Mobile Servs., Inc.*, 25 Cal. App. 5th 680, 687 (2018) ("The elements of any negligence cause of action are duty, breach of duty, proximate cause, and damages"), which Plaintiffs address in the present motion for summary judgment, (Dkt. 101 [Motion for Summary Judgment, hereafter "Mot."].) For the following reasons, Plaintiffs' motion is **GRANTED**.

---

[4] Defendants inappropriately raise arguments against the Court's finding that they are vicariously liable for Peach's negligence. (Dkt. 103 [Defendants' Opposition to MSJ, hereafter "Opp."] at 17-20.) The First MSJ Order already dealt with these arguments. The Court rejects these arguments for the same reasons as those stated in the First MSJ Order.

## II. LEGAL STANDARD

The Court may grant summary judgment on "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 325. A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" when its resolution might affect the outcome of the suit under the governing law. *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 249.

Where, as here, the movant will bear the burden of proof on an issue at trial, the movant "must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *See Vasquez v. City of Bell Gardens*, 938 F. Supp. 1487, 1494 (C.D. Cal. 1996) ("[I]f the moving party has the burden of proof at trial, that party must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in that party's favor.") Once this burden is met, the party resisting the motion must set forth, by affidavit, or as otherwise provided under Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. But the opposing party must show more than the "mere existence of a scintilla of evidence"; rather, "there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson*, 477 U.S. at 252.

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987). The court does not make credibility determinations, nor does it weigh conflicting evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992). But conclusory and speculative testimony in affidavits and moving papers is insufficient to raise triable issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III. DISCUSSION

### A. Causation

To prevail on their negligence claim, Plaintiffs must prove that Peach's negligence caused their financial loss. *See Tribeca Cos., LLC v. First American Title Ins. Co.*, 239 Cal. App. 4th 1088, 1102 (2015). In other words, Plaintiffs must prove Peach's negligent valuation of the Property, which BSR relayed to Plaintiffs in the Mortgage Investment Bulletin, was one of the driving forces behind their decisions to invest in the loan. *See* Rutter Group, Cal. Prac. Guide Civ. Pro. Trial Claims and Def. Ch. 6(I)-B (explaining that negligence need not be *the* sole cause, but a substantial factor in bringing about harm to plaintiff.)

Plaintiffs attest to receiving a Mortgage Investment Bulletin from BSR which stated that the Property was worth $3,400,000. (*See, e.g.*, Dkt. 101-5 [Declaration of

Mark Estle, hereafter "Estle Decl."] ¶ 3-4.)[5] Though Defendants attempt to cloud the clear facts of this case, it is beyond dispute that BSR's representation of the Property's value in the Mortgage Investment Bulletin was based on Peach's negligently performed appraisal. The Mortgage Investment Bulletin states "[BSR] accepted an appraisal with a prospective value of $3,400,000 as of May 1, 2015." (Mortgage Investment Bulletin.) In turn, in the Georgia Complaint, BSR alleges that "[Peach] prepared an appraisal report, which concluded that the value of the Property was $3,400,000 as of May 1, 2015." It should go without saying that the Mortgage Investment Bulletin was referring to Peach's appraisal, even if it did not mention Peach by name. In other words, the Mortgage Investment Bulletin is the means through which BSR passed Peach's negligent valuation of the Property to Plaintiffs.

Plaintiffs attest that they invested in the Loan after receiving the Mortgage Investment Bulletin and would not have done so but for the representation in the Mortgage Investment Bulletin that the Property was worth $3,400,000. (*See, e.g.*, Estle Decl. ¶ 4-5.) Further, in the Georgia Complaint, BSR alleged that Plaintiffs "did in fact rely on [Peach's negligent appraisal] in agreeing to make the Loan" and "would not have agreed to fund the Loan" if they "had known the true value of the Property[,]" and that Plaintiffs suffered substantial damages "[a]s a direct and proximate result of [Peach's negligence[.]" (Georgia Complaint ¶¶ 19, 24-25.) In other words, BSR alleged the causation that Plaintiffs must prove in this case.

Defendants argue that Plaintiffs have not shown causation, but the Court finds Defendants have failed to raise a genuine dispute of material fact. The Court makes a few general comments before addressing some of Defendants more specific arguments on

---

[5] The Court cites Plaintiff Mark Estle's declaration only and as exemplary of the other declarations filed in connection to this motion because the remaining declarations contain substantially the same information as Estle's declaration.

the issue of causation. First, Defendants seem to think that Plaintiffs need to have reviewed Peach's appraisal report in order for the Court to make a finding of causation. (*See* Opp. at 9.) That is not so. What matters here is that BSR passed the key finding of Peach's negligently performed appraisal—the Property's value—off to Plaintiffs in the Mortgage Investment Bulletin, which the Plaintiffs relied on in deciding to invest in the Loan. Plaintiffs do not need to have reviewed the appraisal report itself, they do not need to know who performed the appraisal, and they do not even have to know that any appraisal was performed. They need only show that BSR, their fiduciary, made a representation as to the Property's value—which, as discussed above, was based on Peach's negligent appraisal—and that they relied on that representation.

Next, Defendants did not allow any of the Plaintiffs to refer to any documents during their depositions to refresh their memories of investments they made five years ago. (*See, e.g.*, Estle Decl. ¶ 11.) That some Plaintiffs had trouble during these depositions remembering exactly what they reviewed prior to making their investment decisions is unsurprising and insufficient to create a genuine issue of material fact on this motion as will be further discussed below.

In addition, not every Plaintiff submitted a declaration. Defendants point to this fact as a failure of proof with respect to those Plaintiffs. But they ignore that the Plaintiffs who did not submit a declaration are, for the most part,[6] the wives of Plaintiffs

---

[6] Defendants are correct that Plaintiffs neglected to submit the declaration of Martin Strasburger. The Court believes this was an oversight, rather than an admission by Strasburger that his claims are not appropriate for summary judgment, given that Strasburger submitted a declaration in Plaintiffs' last motion for partial summary judgment in which he stated that he received the Mortgage Investment Bulletin from BSR and relied on the representation that the Property was worth $3,400,000 in deciding to invest in the Loan. (Dkt. 84-9 [Declaration of Martin Strasburger, hereafter "Previous Strasburger Decl."] ¶¶ 3-4.) For reasons discussed below, Plaintiffs' oversight does not defeat summary judgment.

who invested marital funds in the Loan.[7]  The declarations of the husbands of those wives are sufficient to support the claims of both.

Finally, it must be kept in mind that in the Georgia Complaint, BSR alleged that Plaintiffs "did in fact rely on the Appraisal in agreeing to make the Loan[.]"  (Georgia Compl. ¶ 19.)  In other words, BSR alleged the causation that Defendants now contest.  And Defendants seem to concede in their opposition that BSR made Plaintiffs aware of Peach's valuation.  (*See* Opp. at 17 ["Blackburne & Sons fulfilled its duty to provide an opinion of value when it provided Plaintiffs with the 145-page Appraisal prepared by [Peach] . . . Blackburne & Sons disclosed the opined value of [Peach] in the Lender/Purchaser Disclosure Statement."].)  The Court could find causation on these two facts alone, and, in light of these facts, the Court finds it concerning that Defendants try to argue that Plaintiffs were either unaware of the Property's valuation or did not rely on it.  Nevertheless, the Court addresses those arguments.

Defendants attack Krishna Bhola's deposition testimony in which he stated that all he reviewed prior to making his investment was a "five page document" and that he did not know that an appraisal was prepared.  (Opp. at 9.)  Again, Bhola was not allowed to review any documents to refresh his recollection prior to giving this testimony.  Defendants also make no effort to explain what "five page document" Bhola referred to and whether that document contained the $3,400,000 valuation figure.  For all the Court knows, Bhola—who, again, was not referred to any documents to refresh his recollection during his deposition—could have been referring to the Mortgage Investment Bulletin

---

[7] Mark Estle invested money jointly belonging to him and his wife, Cynthia Estle.  (Estle Decl. ¶ 2.)  Krishna Bhola invested money jointly belonging to him and his wife, Jennifer Bhola.  (Dkt. 101-7 [Declaration of Krishna Bhola] ¶ 2.)  John Brossard invested money jointly belonging to him and his wife, Wendy Brossard.  (Dkt. 101-8 [Declaration of Wendy Brossard] ¶ 3.)  Jeffrey Foltz invested money jointly belonging to him and his wife, Lisa Foltz.  (Dkt. 101-9 [Declaration of Jeffrey Foltz] ¶ 2.)  And Daniel Hethcock invested money jointly belonging to him and his wife, Mary Hethcock.  (Dkt. 101-11 [Declaration of Daniel Hethcock] ¶ 2.)

and simply misremembered the number of pages it contained (the Mortgage Investment Bulletin is three pages long). Also, as explained above, that Bhola did not know an appraisal was prepared does not mean he did not know about the $3,400,000 valuation. And indeed, Defendants ignore that Bhola went on to testify that he did know of the $3,400,000 valuation before making his investment decision. (Dkt. 103-5, Ex. E [Deposition of Krishna Bhola] at 77 ["They told me 3.4 million, they meaning Blackburne and Sons. I took their word for it assuming they would be doing due diligence and then lend the money on that basis on the appraisal value."].)

Defendants similarly grasp at straws with the deposition testimony of Patrick Hidalgo. Hidalgo testified that he received an "email [with] an attachment" and that he did not remember what the email said, but he was not asked about what the attachment said. (Dkt. 103-5, Ex. H [Deposition Testimony of Patrick Hidalgo] at 16.) Hidalgo also testified that he did not know who appraised the Property and had no recollection of reviewing an appraisal. (*Id*. at 70, 73.) Once more, however, Defendants leave out that Hidalgo knew the appraised value was $3,400,000. (*Id*. at 71 [Q: "What was the appraised value?" A: "I think, like 3.4 million."].) Hidalgo does not need to know who Peach is and does not need to have reviewed the appraisal report that Peach put together to have known of BSR's representation that the value of the Property was $3,400,000 prior to making his investment decision. That he did not remember what a five-year-old email says does not cast any genuine doubt on his present assertion that he received and relied on the Mortgage Investment Bulletin.[8]

As mentioned above, Plaintiffs seem to have forgotten to submit Plaintiff Martin Strasburger's declaration. Defendants argue that there is no evidence of Strasburger's

---

[8] Defendants point out that Howard Gottlieb testified to receiving a "Bulletin" before investing in the loan. The Court is at a loss as to how this casts doubt on Gottlieb's declaration, in which he states that he relied on the Mortgage Investment *Bulletin*.

reliance on Peach's negligent appraisal. (Opp. at 11-12.) But Defendants are perfectly aware that Strasburger submitted a declaration with Plaintiffs' previous motion for partial summary judgment on these same issues in which Strasburger attested to receiving the Mortgage Investment Bulletin and relying on the $3,400,000 valuation contained therein. (*See* Previous Strasburger Decl.) Even without considering Strasburger's prior declaration, the Court finds that there is enough evidence on the record of this motion to support a finding that Strasburger relied on Peach's negligent valuation in deciding to invest in the Loan. As mentioned above, BSR alleged in the Georgia Complaint that Plaintiffs, including Strasburger, would not have invested in the Loan but for Peach's negligent appraisal. (Georgia Compl. ¶ 19.) And Defendants state in their opposition that they made Plaintiffs, including Strasburger, aware of Peach's appraisal. (*See* Opp. at 17.)

Defendants also submit the deposition testimony of Lisa Foltz, Mary Hethcock, and Cynthia Estle. Their deposition testimony is irrelevant. As explained above, it was their husbands who made the decision to invest their joint marital property. That these wives did not know what their husbands relied on does not cast doubt on the declarations from their husbands, in which each husband represents he relied on the Mortgage Investment Bulletin's representation that the Property was worth $3,400,000.

Wendy and John Brossard represent a special case. John Brossard made the decision to invest in the Loan on his and his wife's behalf. (Dkt. 101-8 [Declaration of Wendy Brossard] ¶ 3.) However, Mr. Brossard now has dementia and is unable to participate in this litigation. (*Id*. ¶ 2.) Mrs. Brossard attests on information and belief that John Brossard "would not have [made the investment] had he known the value of the Security Property was millions of dollars less than $3,400,000.00." (*Id*. ¶ 4.) At her deposition, Mrs. Brossard testified that she had no role in the investment decisions and does not know what documents her husband looked at prior to making the investment.

(Dkt. 103-5, Ex. I [Deposition of Wendy Brossard] at 44, 75, 84.) Defendants offer this testimony as evidence creating a triable issue of fact as to whether John Brossard relied on the Peach's negligent appraisal in making his investment decision. But the Court finds that Defendants have failed to identify a genuine issue of material fact on this issue. Mrs. Brossard's attestation must be assessed in context. When *all* of the other Plaintiff-declarants have attested to receiving the Mortgage Investment Bulletin, and BSR has submitted no evidence that it did not send the Mortgage Investment Bulletin to each of these Plaintiff-declarants, it is reasonable to infer that BSR also sent John Brossard the Mortgage Investment Bulletin. Indeed, as explained above, Defendants assert in their opposition that BSR provided Peach's appraisal to all of the Plaintiffs. (Opp. at 17.) It is further reasonable to assume that a driving force behind John Brossard's decision to invest in a loan secured by a property was the value of that property. BSR alleged just that in the Georgia Complaint. (Georgia Compl. ¶ 19.) That John Brossard is now incapable of stating these facts in a declaration does not create a triable issue of fact as to whether John Brossard relied on BSR's representation of the value of the Property.

The Court also rejects Defendants argument that Plaintiffs have not submitted evidence of the true value of the Property in 2015. (Opp. at 16.) They have submitted such evidence: the Georgia Complaint in which BSR alleged the true value of the Property in May 2015 was $870,000. (*See* Georgia Compl. ¶ 23.) Defendants offer no counterevidence to suggest the Property was worth more than that.[9] And finally, the Court rejects Defendants argument that Plaintiffs cannot recover because they "assume[d]" the risk of the Loan. Defendants simply point to boilerplate risk disclaimers

---

[9] Instead, Defendants argue that Plaintiffs have impermissibly submitted the declaration of an undisclosed expert, Jeffrey Miller, who apparently performed the retroactive appraisal serving as the basis of BSR's allegation in the Georgia Complaint that the Property was only worth $870,000 in 2015. (Opp. at 16-17.) The Court is concerned that Defendants are objecting to the testimony of someone they themselves hired to perform an appraisal of the Property. At any rate, the Court need not address whether Miller's declaration is admissible, because the allegation of the Property's true value in 2015 from the Georgia Complaint is sufficient evidence to support Plaintiffs' theory of causation.

they purportedly made in connection with the Loan and cite no legal authority for the proposition that a broker-fiduciary can pass the risk of an investment off to its investor-clients by making generalized statements regarding the risk inherent in investing one's money in a loan.

### B.   Damages

Plaintiffs have offered compelling and clear support for their damages calculation. The parties have stipulated that the following table reflects the amounts Plaintiffs paid and received in relation to the Loan:

| 1. Investor | 2. Investment Amount | 3. Assessments Paid by Investor | 4. Received from Borrower | 5. Received from Settlement of Appraiser Suit | 6. Received from Sale of Property | 7. Final Distribution | 8. Received from Settlement with Vannucci and Gardner | 9. Net |
|---|---|---|---|---|---|---|---|---|
| Aran | $25,000.00 | $4,453.58 | -$6,558.23 | -$0.00 | -$0.00 | -$0.00 | -$3,399.46 | $19,495.89 |
| Bhola | $25,000.00 | $4,453.59 | -$6,637.52 | -$0.00 | -$0.00 | -$0.00 | -$3,444.03 | $19,372.04 |
| Brossard | $100,000.00 | $17,814.35 | -$26,291.90 | -$0.00 | -$0.00 | -$0.00 | -$13,776.11 | $77,746.34 |
| Estle | $16,000.00 | $4,877.36 | -$4,207.51 | -$1,565.36 | -$7,512.58 | -$485.05 | -$2,204.18 | $4,902.68 |
| Foltz | $50,000.00 | $8,907.17 | -$13,338.43 | -$0.00 | -$0.00 | -$0.00 | -$6,888.05 | $38,680.69 |
| Gottlieb | $200,000.00 | $60,966.91 | -$52,212.22 | -$19,567.07 | -$93,907.25 | -$6,063.16 | -$27,552.21 | $61,665.00 |
| Hethcock | $100,000.00 | $30,483.46 | -$26,101.61 | -$9,783.53 | -$46,953.62 | -$3,031.57 | -$13,776.11 | $30,837.02 |
| Hidalgo | $25,000.00 | $7,620.87 | -$6,601.24 | -$2,445.88 | -$11,738.41 | -$757.89 | -$3,444.02 | $7,633.43 |
| Strasburger | $40,000.00 | $7,130.63 | -$10,582.02 | -$0.00 | -$0.00 | -$0.00 | -$5,515.83 | $31,032.78 |

(Dkt. 101-2 [Stipulation].)  The second column reflects the Plaintiffs' initial investment, the third column reflects assessments Plaintiffs paid to BSR in relation to the Loan, the fourth column reflects principal and interest payments Plaintiffs received from the borrower, the fifth column reflects payments Plaintiffs received from the settlement of BSR's suit against Peach, the sixth column reflects the amounts Plaintiffs' received from

the sale of the Property, the seventh column reflects the amounts some Plaintiffs received for opting out of another lawsuit against a general contractor for the Property, and the eighth column reflects amounts Plaintiffs received in settling their claims against two other BSR officers.  The final column reflects the net amount Plaintiffs lost in relation to the Loan.

Frankly, it is frustrating that after stipulating to the accuracy of the above table, Defendants try to dispute these amounts by pointing to deposition testimony from some Plaintiffs in which those Plaintiffs could not remember exactly how much they paid and received in relation to the Loan.  (*See* Opp. at 13-15.)  In light of the parties' stipulation, the Court rejects Defendants' arguments that there is a genuine dispute over the amounts that flowed to and from Plaintiffs in relation to the Loan.

Defendants also argue that Plaintiffs' assessment payments, which Defendants purport covered "taxes, insurance, and maintenance" of the Property, should not be included in the damages calculation because "said assessments would have been made under any circumstances."  (Opp. at 16.)  In other words, Defendants argue that Plaintiffs would have had to pay assessments in relation to the Loan regardless of Peach's negligence.  This is not true.  The Court has found that Plaintiffs have provided sufficient evidence to show that they would not have invested in the Loan but for Peach's negligence.  In turn, they would never have been in a position to have to pay assessments in relation to the Loan but for Peach's negligence.[10]

---

[10] Defendants rely on *Walters v. Marler*, 83 Cal.App.3d 1, 26-27 (1978) to support their position that taxes, insurance, and maintenance expenses should be excluded from the damages calculation. Defendants' reliance on *Walters* is misplaced.  In *Stout v. Turney*, 22 Cal.3d 718 (1978), the California Supreme Court held that post-investment expenditures are recoverable under an out-of-pocket theory of damages.  *See also Hardy v. Carmichael*, 207 Cal.App.2d 218, 228 (1962) (allowing recovery of post-purchase expenditures).  The Court further notes that California Civil Code section 3333 governs the present action.  *See Walters*, 83 Cal.App.3d at 26 (explaining section 3333 governs where tortfeasor is in fiduciary relationship with plaintiff).  Allowing Plaintiffs to recover post-investment assessments—assessments which, again, Plaintiffs never would have had to pay for but for Peach's negligent

     Defendants also argue that Plaintiffs should not be allowed to recover after they voted to approve BSR's settlement of its suit against Peach. (Opp. at 5.) Under California Civil Code § 877, a settlement as to one of a number of tortfeasors does not discharge other tortfeasors from liability, unless the settlement states the contrary. *See* Cal. Civ. Code § 877(a). This concept is applied in cases of vicarious liability, like the present action. *See Mayhugh v. Cnty. of Orange*, 141 Cal. App. 3d 763 (1983); *Schreiber v. Lee*, 47 Cal. App. 5th 745 (2020). A plaintiff can settle with the primary tortfeasor (here, Peach) and still seek damages from the secondary tortfeasor (here, Defendants). *See Fiege v. Cooke*, 125 Cal. App. 4th 1350 (2004). But the plaintiff's recovery from the non-settling-tortfeasor must be reduced by the amount recovered from the settling-tortfeasor. *See Am. Motorcycle Ass'n v. Super. Ct.*, 20 Cal. 3d 578 (1978). There is no indication in the record that BSR's settlement with Peach stated that BSR should be absolved of liability vis-à-vis Plaintiffs. And Plaintiffs have properly subtracted the amounts they received in connection with the Peach settlement from their damages calculation.

     The Court also rejects Defendants' arguments that some Plaintiffs failed to mitigate their damages. (Opp. at 3.) According to Defendants, certain Plaintiffs became "subordinated" investors when they failed to share in certain costs relating to the Loan, such that they did not receive funds from the Peach settlement and sale of the Property, as reflected in the above table. (*Id*. at 3-4.) Defendants' theory of mitigation is that Plaintiffs should have given them more money after it was revealed that the Property was worth far less than BSR represented. Defendants cite no authority, and the Court is certainly not aware of any authority, under which a plaintiff is expected to "mitigate" his

---

appraisal—aligns with the broad wording of section 3333, which permits recovery of "the amount which will compensate for *all the detriment proximately caused*" by "the breach of an obligation not arising from contract[.]" Cal. Civ. Code § 3333 (emphasis added).

damages by handing more money over to a tortfeasor who the plaintiff claims took his money based on a misrepresentation.

Plaintiffs also included the following helpful table in their motion reflecting the date Plaintiffs made their initial investment for the purpose of calculating prejudgment interest on the initial investments:

| Investor | Investment | Date Paid | Per Diem Interest at 7% | Days to 1/31/22 | Accrued Interest to 1/31/22 |
|---|---|---|---|---|---|
| Aran | $25,000.00 | 3/19/2015 | $4.79 | 2,517 | $12,056.43 |
| Bhola | $25,000.00 | 3/9/2015 | $4.79 | 2,527 | $12,104.33 |
| Brossard | $100,000.00 | 3/17/2015 | $19.17 | 2,519 | $48,289.23 |
| Estle | $16,000.00 | 3/17/2015 | $3.06 | 2,519 | $7,708.14 |
| Foltz | $50,000.00 | 3/5/2015 | $9.58 | 2,531 | $24,246.98 |
| Gottlieb | $200,000.00 | 3/23/2015 | $38.35 | 2,513 | $96,373.55 |
| Hethcock | $100,000.00 | 3/23/2015 | $19.17 | 2,513 | $48,174.21 |
| Hidalgo | $25,000.00 | 3/13/2015 | $4.79 | 2,523 | $12,085.17 |
| Strasbuger | $40,000.00 | 3/12/2015 | $7.67 | 2,524 | $19,359.08 |
| | | | | Total prejudgment interest: | $280,397.12 |

(Mot. at 5.)

The Court is not troubled that Plaintiffs' damages calculation differs from their past motions for partial summary judgment, as Defendants point out. (Opp. at 15.) Interest grows by the day. So as Defendants continue to delay Plaintiffs' recovery, they are going to owe more interest.

1  Based on the above tables, Plaintiffs calculate their damages to be $571,762.99, or the net amount the Plaintiffs paid to BSR in relation to the Loan (after subtracting funds received) plus the prejudgment interest on the Plaintiffs' initial investments from the day they made those investments to January 31, 2022, or one week prior to the hearing scheduled for this matter.  Out-of-pocket damages are the correct measure of damages in this case.  In *Christiansen v. Roddy*, a loan broker hired a real estate appraiser to value a property that a borrower intended to use as collateral for a loan that the respondent-investors invested in.  186 Cal. App. 3d 780, 783 (1986).  The appraiser negligently misrepresented that the property was worth $230,000.  *Id*. at 783-84.  The court explained that the out-of-pocket measure of damages was the correct measure to assess the harm to the respondent-investors.  (*Id*. at 790.)  The facts of this case are substantially similar to those in *Christiansen*.  It is appropriate for Plaintiffs to calculate their damages as the money they handed over to BSR in reliance on Peach's negligent appraisal of the Property minus the money BSR returned to them.

It is further appropriate for Plaintiffs to demand prejudgment interest on their initial investments at an annual rate of 7%.  Again, this case is like *Christiansen*, in which the appellate court faulted the trial court for awarding the respondent-investors interest at a rate of 20%.  *Id*. at 791.  In California, the constitutional rate of prejudgment interest where no statute provides otherwise is 7%.  *See Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994) (citing Cal. Const., art. XV, § 1); *Bareika Corp. Ltd. v. Wells Fargo Bank, N.A.*, 2018 WL 6427362, at *3 (C.D. Cal. June 6, 2018) ("Where recovery is based in tort, courts have generally applied a prejudgment interest rate of 7% per annum.").  The *Christiansen* court held that "the award of interest at the legal rate, consistent with the provisions of Civil Code section 3287 would be appropriate."  *Id*. at 791.  In turn, California Civil Code section 3287(a) provides: "A person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in the person upon a particular day, is entitled also to recover interest

thereon from that day[.]" Cal. Civ. Code § 3287. The amounts of Plaintiffs' initial investments are certain and Plaintiffs' right to recoup their initial investments vested the day they parted with that money in reliance on Peach's negligence. Indeed, the parties have stipulated to the amounts invested and the Plaintiffs' have each attested to the day they made their initial investments. (*See, e.g.*, Estle Decl. ¶ 5.); *see also Anaykin v. Evdokimov*, 2021 WL 5513511, at *2 (C.D. Cal. July 20, 2021) (awarding prejudgment interest from date of investment to date of judgment); *Liu Hongwei v. Velocity V Ltd. P'ship*, 2018 WL 3414053, at *9 (C.D. Cal. July 11, 2018) (same). Awarding Plaintiffs prejudgment interest starting from the date they parted ways with their money owing to Peach's negligence is consistent with the purpose of prejudgment interest, which is "to cover the lost investment potential of funds to which the plaintiff was entitled, from the time of entitlement to the date of judgment." *Nelson v. EG & G Energy Measurements Group, Inc.*, 37 F.3d 1384, 1391 (9th Cir. 1994) (citation omitted). Plaintiffs were certainly "entitled" to their own money just before investing in the Loan, and only parted ways with that money due to Peach's negligence, for which Defendants are liable.

Defendants contend that, per California Civil Code section 3288, prejudgment interest lies in the sole discretion of the jury. (Opp. at 20.) This is not so. "[W]hen a court has granted judgment as a matter of law on all substantive issues, the court has authority to award prejudgment interest under § 3288." *In re Slatkin*, 525 F.3d 805, 820 (9th Cir. 2008). Defendants also argue that prejudgment interest on Plaintiffs' initial investments should not be measured from the date of their initial investments because after those dates they received various payments in relation to the loan, including principal and interest payments, settlement payments, and Property sale proceeds. (Opp. at 20.) Defendants cite no legal authority for this proposition. That Plaintiffs received money after their initial investments does not change the fact that they were induced to party ways with their money on a date certain. Once they invested that money, even if it did bring them some returns for a time, they were deprived of the opportunity to invest

the money in, for example, a different loan secured by a property that was actually worth what the broker said it was worth. Prejudgment interest serves the purpose of compensating Plaintiffs for this lost opportunity. Further, Plaintiffs have properly subtracted any amounts they received from BSR in their damages calculation. There will be no double recovery here because Plaintiffs are not attempting to retain interest payments they received in relation to the Loan while also claiming prejudgment interest.

Finally, Defendants argue that Plaintiffs have not submitted evidence to support their interest calculation. (Opp. at 20-21.) The Court is capable of checking Plaintiffs' math and has done so. Plaintiffs' interest calculations are accurate, as reflected in the above table, and Plaintiffs need not submit a declaration showing how they performed a routine calculation.

**IV. CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is **GRANTED**. The Court enters judgment against Defendants and in favor of Plaintiffs in the total amount of **$571,762.99**. Plaintiffs shall file a proposed judgment in accordance with this order by **February 15, 2022**.

DATED: February 8, 2022

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE